IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARJORIE TRAMP, | ) | CASE NO.: 11-371 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT |
| | ) | |
| ASSOCIATED UNDERWRITERS, INC.. | ) | |
| | ) | |
| Defendant. | ) | |

COME NOW the Plaintiff and for her claims states and alleges as follows:

1. That Plaintiff is a female individual who resides in Nebraska and was an employee of the Defendant until 2009 and was approximately 71 years of age when terminated.

2. That the Defendant is a corporation duly licensed to conduct business in the State of Nebraska.

3. The Plaintiff brings this action pursuant to Title VII (42 U.S.C. 2000 e-5), ADEA (29 U.S.C. 626, *et seq.*) and 42 U.S.C. 1981 with this court having jurisdiction pursuant to 28 U.S.C. §1331 and §1343 and pendent jurisdiction over the state law based claims

4. The Plaintiff has exhausted all administrative remedies including receipt of a right to sue letter from the E.E.O.C. on or about July 28, 2011 and completed all other applicable internal administrative remedies. Plaintiff filed NEOC complaints on April 20, 2009 (post-termination).

5. The Plaintiff was employed with Defendant starting in 2000. The Defendant corporation underwent a change in ownership in approximately 2007. At the time of the change in ownership, and until her termination, the Plaintiff was employed as a customer service representative and provided much of the training for newly hired customer service employees having been employed in that position since her initial hire in 2000. From the date of her hire to the change in ownership, the Plaintiff received annual job reviews, which were all satisfactory,

and received annual raises. Under the Defendant's new ownership, from 2007 to the date of Plaintiff's termination, the Plaintiff received neither job reviews nor any raises.

6. In August of 2008, one of the new owners of the Defendant requested that the Plaintiff voluntarily withdraw from coverage under the company's health insurance policy and apply for Medicare/Medicaid health insurance coverage. The Plaintiff was informed that Defendant's ownership was aware that Plaintiff would qualify for Medicare/Medicaid coverage due to her age. The Plaintiff was given one day to make her decision whether to stay on the Defendant's health insurance policy (for which she was already enrolled) or to withdraw her enrollment and apply for Medicare/Medicaid coverage. The next day, the Plaintiff informed the Defendant's new owners that she would not withdraw from the Defendant's health insurance policy. Approximately five days later, one of Defendant's new owners contacted the Plaintiff and expressed his "disappointment" with the Plaintiff's decision indicating that Plaintiff was being selfish in contributing to the increased cost of younger employee's health insurance related costs when the Plaintiff could be covered by Medicare/Medicaid health insurance.

7. On October 9, 2008, Plaintiff was reprimanded and placed on a 90 day probationary period. The reprimand was allegedly based upon the Plaintiff's failure to contact a customer regarding a change in insurance policy coverage and cancellation of another customer's insurance policy. The incident involving the cancellation of the customer's insurance policy had taken place in March of 2008, seven months before the reprimand.

8. The Defendant issued an employee handbook in April of 2008. The Defendant's employee handbook states: "Generally, if disciplinary action is taken by a supervisor or management, it will be applied progressively, *e.g.*, written warning, new orientation period, demotion, suspension, termination." The Plaintiff was given no notice by the Defendant's

management or the Plaintiff's supervisor that any actions by the Plaintiff had been performed incorrectly, a process or procedure had not been followed, or alternative actions the Plaintiff could take when faced with similar circumstances in the future.  The Plaintiff was not afforded the opportunity to discuss any mitigating circumstances with respect to her actions prior to being placed on probation.

9. In January of 2009, the Plaintiff informed Defendant that she needed to undergo an arthroscopic procedure to her right knee.  The Plaintiff provided this information to the Defendant after her 90 day probationary period had expired.  At the end of the Plaintiff's probationary period, the Defendant took no action whatsoever towards the Plaintiff; no notice was provided that the Plaintiff's employment would be retained, that the Plaintiff had successfully completed her probationary period and was returned to her pre-probationary status, or that the probationary period would be extended.  The Plaintiff notified the Defendant that she would be utilizing sick days and vacation days for her recovery period, made arrangements for other employees to cover her responsibilities during her recovery period, and informed the Defendant the arthroscopic procedure would be performed on February 4, 2009.

10. On February 3, 2009, the Defendant terminated Plaintiff's employment.  From October 9, 2008, to the date of Plaintiff's termination, the Defendant did not conduct any job review of the Plaintiff's work performance during her period of probation.  The Defendant did not issue any additional complaints, reprimands, or written warnings with respect to the Plaintiff's work performance during her probationary period.  On February 3, 2009, the Plaintiff was informed it was her last day of employment with no explanation as to the reason for termination.

11. On the date of the Plaintiff's termination, the Defendant retained customer service representatives whose ages were approximately between 20 and 30 years of age. Both of these retained customer service representatives had less seniority than the Plaintiff on the date of the Plaintiff's termination. Additionally, one of the retained customer service representatives was not a licenses insurance agent as was the Plaintiff on the date of her termination. Had Plaintiff's employment not been terminated, the Plaintiff planned to return to her position approximately 5 days after her arthroscopic surgery. To date, Plaintiff has fully recovered from her arthroscopic surgery and has no physical disability that would prevent her from performing the functions of her previous position with the Defendant.

12. Defendant failed to follow its own policies and procedures as set forth in the Defendant's employee handbook in reprimanding, and ultimately, terminating the Plaintiff's employment. Defendant wrongfully, and incorrectly, terminated the Plaintiff's employment based upon a perception of physical disability resulting from the Plaintiff's arthroscopic knee surgery. Defendant wrongfully terminated the Plaintiff's employment based upon the Plaintiff's age and her ability to withdraw from the Defendant's health insurance coverage and substitute Medicare/Medicaid coverage due to the Plaintiff's age.

13. As a direct and proximate result of the Defendants actions as set forth above, the Plaintiff has suffered lost wages and lost benefits and continues to suffer these damages.

**FIRST THEORY OF RECOVERY (Title VII, ADEA, and ADA)**

14. The Plaintiff incorporates paragraphs 1 through 13 as fully set out herein.

15. The Plaintiff was harassed, retaliated against, and terminated for actions set forth herein on the basis of her age, race, disability and sex. At all times relevant herein, the Plaintiff was physically capable of performing her duties while employed with the Defendant.

4

Additionally, the Plaintiff's had satisfactorily performed her duties while employed by the Defendant and the Plaintiff's job duties were not dependant upon whether the Plaintiff was enrolled on the Defendant's company health insurance policy or on Medicare/Medicaid.

16. The Plaintiff should not have been terminated when other employees holding similar positions with the Defendant, although younger, were retained with less seniority and qualifications than the Plaintiff.

17. The Plaintiff suffered damages as a result of the Defendants' actions.  In addition to the general damages of the loss of wages and benefits, the Plaintiff is also entitled to recover the costs of attorney fees to prosecute this action, and the Plaintiff is also entitled to receive punitive damages in an amount to be determined pursuant to statute.

WHEREFORE, the Plaintiff prays for judgment for general damages, punitive damages, attorney fees and costs, and such further compensatory relief as the court may deem just and equitable.

_____
/s John P. Weis

John P. Weis #19618
7000 Spring Street
Omaha, Nebraska  68106
(402) 397-6200
FAX (402) 397-6290
jweis@sodorolaw.com
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff again demands a twelve-person jury trial on the claims and that the trial site on all of the claims be Omaha, Nebraska.