IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARJORIE TRAMP,<br><br>                Plaintiff,<br><br>vs.<br><br>ASSOCIATED UNDERWRITERS, INC.,<br><br>                Defendant. | CASE NO. 8:11CV371<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Defendant's Motion for Summary Judgment (Filing No. 46). The parties have submitted briefs (Filing Nos. 47, 53, 60) and indexes of evidence (Filing Nos. 49, 54, 56) in support of their respective positions. For the reasons discussed below, the Motion will be granted, and this action will be dismissed with prejudice.

## BACKGROUND

The following is a summary of facts presented in the parties' briefs. The Defendant submitted a numbered statement of material facts, supported by pinpoint citations to evidence in the record in compliance with NECivR 56.1(a). Plaintiff also submitted a numbered statement of "additional material facts," but did not respond to the Defendant's statement of facts as required by NECivR 56.1(b). Accordingly, all properly referenced material facts in the Defendant's statement are considered admitted unless controverted in the Plaintiff's response.[1]

Plaintiff, Marjorie Tramp ("Plaintiff"), was hired by the Defendant, Associated Underwriters, Inc., ("Defendant" or "Associated Underwriters") in 2000. Associated

---

[1] "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1).

Underwriters was purchased by Greg Gurbacki ("Gurbacki") and Chris Hallgren ("Hallgren") in August 2007. At the time of the purchase, Hallgren served as President of Associated Underwriters. In that capacity, Hallgren was in charge of the company's annual valuation, its bookkeeping, and the management of its computers. Hallgren was not involved in the hiring and firing of employees. Beginning in 2007, Gurbacki ran Associated Underwriter's office, reviewed the company's financial condition, and was in charge of the hiring and firing of employees. At the time of the 2007 purchase, Associated Underwriters was operating at a loss, and it continued to operate at a loss into 2012.

Due to economic difficulties, Associated Underwriters underwent a Reduction-in-Force ("RIF") in 2007 (the "2007 RIF"). In total, seven employees were let go as part of the 2007 RIF. Gurbacki decided who to let go based on his opinion of the quality of the employees' work. The Plaintiff was not let go during the 2007 RIF, even though Gurbacki had concerns about her job performance. Gurbacki did believe that the Plaintiff was a better performer than employees that were let go in the 2007 RIF.

In July 2008, Associated Underwriters was still struggling and had what Gurbacki and Hallgren described as severe financial problems. At that time, the company's income and expense sheets were negative. To save money, Gurbacki suggested the elimination of the company's health insurance program. Hallgren opposed this idea. Rather than cut health insurance or undergo another RIF in 2008, Associated Underwriters cut other expenses by consolidating offices and cutting the company's advertising budget.

In the summer of 2008, Associated Underwriters experienced an 18 percent price increase in its group healthcare plan. As a result, Hallgren solicited proposals through several different companies. Hallgren filled out enrollment forms in order to obtain new quotes for group coverage. The enrollment forms requested the age of each of the company's employees. The resulting quote from at least one insurer reflected significantly lower premiums compared to the proposal submitted by other insurance companies. Upon investigation, Hallgren learned that the insurer did not include the Plaintiff and another employee, Barb Treadway ("Treadway"), within the proposal. A representative from the insurer explained to Hallgren that this was because people over the age of 65 "usually don't get quoted" as they are Medicare eligible. Upon Hallgren's request, the insurer provided a revised quote that included the Plaintiff and Treadway in its proposal for group coverage. The modified proposal showed a significant increase in premiums when Plaintiff and Treadway were included, particularly with family coverage.

Hallgren believed that a substantial savings in health insurance premiums would benefit Associated Underwriters' employees and the company overall. Accordingly, Hallgren met with the Plaintiff and Treadway in July 2008, and suggested that they utilize Medicare instead of the company's healthcare plan. Hallgren claims that in this meeting he offered to cover 100% of a Medicare supplement, and believed that would provide better coverage for both Plaintiff and Treadway, in addition to cutting costs for the company. Plaintiff denies that Hallgren offered to cover the cost of Medicare Supplements. Plaintiff and Treadway decided to stay on the Defendant's healthcare plan.

Gurbacki testified during his deposition that he regularly evaluated his employees and examined how the employees treated customers, including whether people benefitted from their support, whether they were difficult with customers, and whether the employees completed assigned tasks. In comparison to other employees, Gurbacki considered the Plaintiff to be the least efficient performer. The Plaintiff questioned Gurbacki on various business decisions, including when to cancel an insurance policy. According to Gurbacki, Plaintiff did not want to cancel certain policies because it would have been "harder" on the Plaintiff to do so. Plaintiff repeatedly failed to cancel insurance policies when asked. Gurbacki thought Plaintiff was incapable of helping customers transition smoothly between their current insurer to Associates Underwriters' insurers.

On October 9, 2008, Plaintiff was formally reprimanded for poor performance. This reprimand identified three examples of the Plaintiff's poor performance. In particular, Plaintiff's formal reprimand documented the following performance problems: (1) Plaintiff mistakenly added the same vehicle on two policies – one with liability only and one with full coverage, and then deleted the liability only policy; (2) Plaintiff cancelled insurance coverage for a house located in a hurricane zone resulting in a higher premium and deductible when the customer tried to reinstate coverage; and (3) Plaintiff failed to cancel policies in addition to causing renewals to be sent out when they had already been stopped. (Filing No. 49-3). Following her formal reprimand, Plaintiff was placed on a 90-day probationary period. She was taken off probation in January 2009.  In addition to the three incidents for which the Plaintiff was formally reprimanded, Gurbacki claims that he had other concerns with the Plaintiff's job performance. For

example, Gurbacki thought Plaintiff had an uncooperative attitude. In addition, Gurbacki claims that Plaintiff received additional verbal warnings.

On February 3, 2009, Associated Underwriters underwent another RIF (the "2009 RIF") due to its poor financial performance. Prior to the RIF, Hallgren told Gurbacki that the Company needed to make cuts. In response, Gurbacki made the decision to lay off employees. In total, four employees were let go, including the Plaintiff. Other employees terminated were: Treadway, 72 years old; Stacy Bell, 38 years old; and Andrea Altrock, 39 years old. Three of the terminated employees worked in commercial lines. The Plaintiff worked in personal lines. Gurbacki asserts that he did not base his decision to terminate the Plaintiff on her age or because she refused the offer for alternative healthcare coverage. Instead, Gurbacki testified that he chose to include Plaintiff in the 2009 RIF because of her historically poor job performance. (Filing No. 45-4, Gurbacki Depo, at 79: 5-21, 100: 13-20). Defendant did not replace Plaintiff after her termination. Instead, Plaintiff's job duties were divided between the four employees in the personal lines department. These employees included Sandy Peer – 49; Sue Stilmock – 46; Kelsey Hetrick – 25; and Bob Dunn – 66.

Plaintiff alleges a single theory of recovery, claiming that she was harassed, retaliated against, and terminated based on her age, race, disability, and sex. (Filing No. 1 ¶ 15.) Plaintiff asserts that she is entitled to recovery under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626, and 42 U.S.C. § 1981. (Filing No. 1 ¶ 3.)  Elsewhere, Plaintiff claims she is also entitled to recovery under the Americans with Disabilities Act (the "ADA"), 42

U.S.C. §§ 12102. (Filing No. 1 ¶ 15; Filing No. 21 at 22.) Defendant filed the present Motion asserting that the Plaintiff's claims each fail as a matter of law.

## STANDARD

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Serv., Inc.,* 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)). The court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011). However, "'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). A separate summary judgment standard does not exist for employment discrimination cases. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir.), *cert. denied,* 132 S. Ct. 513 (2011). In the employment discrimination context, summary judgment remains a "useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce "evidentiary materials that demonstrate the existence of a 'genuine issue' for trial." *Id.* "[T]he absence of an adequate response by the nonmovant, even after the moving party has carried its initial burden of production, will not automatically entitle the movant to entry of summary judgment." *Lawyer v. Hartford Life & Acc. Ins. Co.*, 100 F. Supp. 2d 1001, 1008 (W.D. Mo. 2000) (citing *Celotex*, 477 U.S. at 331). Instead, "the moving

party must show that the evidence satisfies the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* (citing *Celotex*, 477 U.S. at 331). In other words, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "'genuine issue for trial'"–summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).

## DISCUSSION

Despite the varied legal authority cited in Plaintiff's Complaint, she has conceded in her responses to Defendant's Interrogatories that she is not seeking recovery for any discrimination based on race or sex. (Filing No. 49-6 at 4-5.) As to her remaining claims under the ADEA and the ADA, the Court concludes that summary judgment is appropriate because Plaintiff fails to establish a prima facie case under either theory.

**I.     Plaintiff's Claims Under the ADEA**

Associated Underwriters first claims that Plaintiff has failed to establish a prima facie case of age discrimination under the ADEA. The purpose of the ADEA is to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. §621(b). Thus, the ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of*

such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added); *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1411 (8th Cir. 1997).

"Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor," and therefore, does not "authorize[ ] . . . mixed-motives age discrimination claim[s]." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)). Thus, under the ADEA, an employer does not "discriminate against an[ ] individual . . . *because of* such individual's age," 29 U.S.C. § 623(a)(1) (emphasis added), unless "age [is] the 'but-for' cause of the employer's decision." *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011) (citing *Gross*, 557 U.S. at 176). Consequently, although "[t]he employer cannot rely on age as a proxy for an employee's remaining characteristics, such as productivity," it can "focus on those factors directly." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). Furthermore, there is no discrimination under the ADEA "[w]hen the employer's decision *is* wholly motivated by factors other than age . . . even if the motivating factor is correlated with age," at least when age is analytically distinct from the motivating factor. *Id.* (emphasis in original).[2]

---

[2] In *Hazen Paper*, the Supreme Court found that the plaintiff did not have an ADEA claim based on allegations that the motivation behind the employer terminating his employment was that his pension benefits would soon vest. *Hazen Paper*, 507 U.S. at 608-09. The Supreme Court stated:

> When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is. Pension plans typically provide that an employee's accrued benefits will become nonforfeitable, or "vested," once the employee completes a certain number of years of service with the employer. On average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee's age is analytically distinct from his years of service. An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are

"'A plaintiff may establish her claim of intentional age discrimination through either direct evidence or indirect evidence. [W]here the plaintiff presents indirect evidence of discrimination, the court analyzes her claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Tusing*, 639 F.3d at 515 (alteration in original) (quoting *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009)); *see also Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1411 (8th Cir. 1997) (citing *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir. 1994)); *Bigelow v. Cent. States Health & Life Co.*, No. 4:05CV472, 2007 WL 2694494, at *6 (D. Neb. Sept. 11, 2007) (citing *McDonnell Douglas*, 411 U.S. at 802, 804; *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996)).

Under the *McDonnell Douglas* burden-shifting analysis, the plaintiff must first establish a prima facie claim of discrimination. *Loeb v. Best Buy Co., Inc.*, 537 F.3d 867, 872 (8th Cir. 2008). "To establish a prima facie claim of age discrimination, a plaintiff must show (1) she was at least forty years old; (2) she was terminated; (3) she was meeting the employer's reasonable expectations at the time of the termination; and (4) she was replaced by someone substantially younger." *Bigelow*, 2007 WL 2694494, at *7 (citations omitted); *See also Loeb*, 537 F.3d at 872 (citing 29 U.S.C. § 631(a); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).[3] In cases such

---

    analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."

*Id.* at 611 (internal citations omitted).

[3]*See Loeb*, 537 F.3d at 872 (citing 29 U.S.C. § 631(a); *Reeves*, 530 U.S. 133, 142 (2000)):

To establish a prima facie case, [the plaintiff] must show that (1) at the time he was fired he was over 40 (a member of the class protected by the ADEA) . . .; (2) he was otherwise

as this, where the Plaintiff was terminated as part of a RIF, the Plaintiff need not establish the fourth element. *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir. 1995) (citing *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1165 (8th Cir. 1985)). Instead, the Plaintiff "must provide some "additional showing" that age was a factor in the termination." *Id.*

"Once the plaintiff satisfies this burden, [the] defendant must offer a legitimate, non-discriminatory reason for the employment action." *Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008) (citing *Clark v. Johanns*, 460 F.3d 1064, 1067 (8th Cir.2006)). The defendant's "burden is one of production, not persuasion;" therefore, the determination that the defendant has met its burden "'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509(1993)). "If the defendant satisfies its burden, . . . the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretextual." *Bigelow*, 2007 WL 2694494, at *6 (citing *McDonnell Douglas*, 411 U.S. at 802, 804). That is, the plaintiff must "'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times

---

qualified for the position that he had; (3) he was discharged by [the defendant]; and (4) [the defendant] subsequently hired a younger person to fill his position.


with the plaintiff.'" *Reeves*, 530 U.S. at 142 (quoting *Burdine*, 450 U.S. at 253); *see also Bigelow*, 2007 WL 2694494, at *6 (citing *McDonnell Douglas*, 411 U.S. at 802, 804) (quoting *Rothmeier*, 85 F.3d at 1332) ("'the plaintiff retains at all times the ultimate burden of persuading the trier of fact that the adverse employment action was motivated by intentional discrimination.'").

Plaintiff agrees that her ADEA claim is governed by the *McDonnell Douglas* burden shifting framework. Under that framework, Plaintiff fails to provide any evidence that age was the but-for cause behind her termination. To prove her case, Plaintiff relies on evidence that Defendant terminated her because her age and health were affecting Associated Underwriters' employee health insurance costs. Specifically, Plaintiff claims her termination was motivated by her refusal to withdraw from the Defendant's health plan and apply for Medicare or Medicaid. (See Filing No. 53 at 11-12; Filing No. 49-2 at 19:-5-21:20; 22:3-24.) Plaintiff cites an email exchange between Gurbacki and Claire Adams, an account manager with Coventry Health Care of Nebraska ("Coventry"), the Defendant's health insurance provider. In the email, Gurbacki stated:

> Since last year we have lost our oldest and sickest employees, Jim & Shari Devine are no longer here, Barb Treadway and Marjorie [Tramp] are no longer here. Please let me know if this is the best we can do, what choices we have with you as I know that Chris and Jeff Mann would like to stay with you but we were expecting a rate decrease from the group becoming younger and healthier not an increase.

(Filing No. 56-16 at CM/ECF p. 8-9.) Plaintiff claims that this evidence demonstrates that a "trier of fact could conclude that the Defendant terminated the Plaintiff's employment in order to reduce the Defendant's health insurance premium costs." (Filing No. 53 at 14.)

11

It is undisputed that Gurbacki's choice of words was crude and perhaps insensitive. Nevertheless, Plaintiff's position undermines her ADEA claim. Plaintiff's "additional showing" of age discrimination relies on allegations that Defendant's decision to terminate her employment was motivated purely by health care costs. Although health care costs tend to be positively correlated with age, such costs are analytically distinct from age. *See Hazen Paper*, 507 U.S. at 611; *see also Gross*, 557 U.S. at 175 ("Our inquiry therefore must focus on the text of the ADEA to decide whether it authorizes a mixed-motives age discrimination claim. It does not."). As stated above, there can be no discrimination under the ADEA "[w]hen the employer's decision is wholly motivated by factors other than age . . . even if the motivating factor is correlated with age," at least when age is analytically distinct from the motivating factor. *Hazen Paper*, 507 U.S. at 611.

Plaintiff's own evidence demonstrates that age and health care costs were analytically distinct in this case. For example, Coventry's response to Gurbacki's email shows that despite Plaintiff's termination, Coventry was unable to lower Defendant's premiums. (Filing No. 56-16 at CM/ECF p. 7.) Coventry's account manager explained that because the 2009 RIF reduced enrollment in the Defendant's health plan, the premiums would increase even more. (*Id.*) This evidence demonstrates that factors other than age affect health care costs. Plaintiff's only "additional showing" of age discrimination is that she was terminated "in order to reduce the Defendant's health insurance premium costs." (Filing No. 53 at 14.) Plaintiff's position demonstrates that Defendant was motivated by factors other than age. Because the statute does not

permit mixed-motives age discrimination, Plaintiff has not met her burden under the ADEA.

## II. Plaintiff's Claims Under the ADA

Plaintiff asserts that Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182(a), by terminating Plaintiff "in a heartless attempt to reduce the costs of their health insurance premiums." (Filing No. 53 at 22.) Like Plaintiff's ADEA claims, the Court analyzes her ADA claims under the *McDonnell Douglas* burden shifting framework. *Olsen v. Capital Region Med. Ctr.*, 713 F.3d 1149, 1153 (8th Cir. 2013). Under the ADA claim, the Plaintiff must show that: "(1) she is disabled; (2) she is qualified to perform the essential functions of her job, with or without accommodation; and (3) she suffered an adverse employment action under circumstances from which an inference of unlawful discrimination could be inferred." *Id.* at 1153-54 (internal marks omitted).

It is highly doubtful that Plaintiff has demonstrated that she was disabled under the ADA. "Disability is defined as: '(A) a physical or mental impairment that substantially limits one or more major life activities of an individual, (B) a record of such an impairment, or (C) being regarded as having such an impairment.'" *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1032 (8th Cir. 2012) (quoting 42 U.S.C. § 12102(1)). "When the major life activity at issue is working, 'the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.'" *Id.* (quoting *Knutson v. Ag Processing, Inc.,* 394 F.3d 1047, 1051 (8th Cir.2005)).

Plaintiff claims that she is disabled under the ADA because of knee pain that limited her ability to perform her daily tasks, and to remedy this pain, she was scheduled

13

for arthroscopic knee surgery. (Filing No. 53 at 22; Filing No. 49-2 at 30:6-33:5.) She claims that her activity would be even more limited during her recovery period. (Filing No. 53 at 22.) Plaintiff claims that Defendant was aware of this procedure, and terminated her employment the day before the surgery was to take place. (Filing No. 49-2 at 31:2-32:23.) Other than these conclusory allegations, Plaintiff presents no evidence that would satisfy the ADA, even under the more lenient standards of the ADA Amendments Act of 2008 ("ADAAA"), which became effective on January 1, 2009. *See* 42 U.S.C. § 12102; Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008). Several courts have concluded that knee surgeries such as the Plaintiff's are insufficient to establish a disability under the ADA. *See Zurenda v. Cardiology Associates, P.C.*, 3:10-CV-0882, 2012 WL 1801740 (N.D.N.Y. May 16, 2012) (concluding that a knee surgery with a potential recovery of 6 to 12 months was insufficient to prove disability under the ADAAA); *Murray v. Svsco Corp.,* 1998 WL 160826, at *8 (N.D.N.Y. Apr. 2, 1998) (holding that a knee injury requiring surgery did not have the required duration or long-term impact to qualify as a disability under the terms of the ADA). Accordingly, Plaintiff has not presented sufficient evidence that she is disabled under the ADA.

Even if an issue of fact remained as to whether the Plaintiff is disabled under the ADA, she has not established that her termination was motivated by her disability. The ADA "is not a general protection of medically afflicted persons. It protects people who are discriminated against by their employer . . . either because they are in fact disabled or because their employer mistakenly believes them to be disabled." *Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997) (Posner, J.). In *Christian*, the court noted that the principles of *Hazen Paper* would apply to claims under the ADA.

Thus, even if Plaintiff is disabled under the ADA, Plaintiff's argument concedes that Defendant terminated her to save health care costs, and not because she was disabled. Accordingly, her ADA claim must be dismissed.

## CONCLUSION

Plaintiff has not presented sufficient evidence to support her claims under the ADEA and ADA. Plaintiff argues under both claims that she was terminated as a result of Defendant's attempts to reduce its health care costs. Even if this assertion is true, Defendant did not terminate Plaintiff because of her age, nor due to any real or perceived disability. Plaintiff has not established a prima facie case under either theory, and her claims must be dismissed. Accordingly,

IT IS ORDERED:

1. The Defendant's Motion for Summary Judgment (Filing No. 46) is granted;

2. This action is dismissed with prejudice;

3. All pending motions in this case are denied as moot; and

4. A separate judgment will be entered.

Dated this 17th day of June, 2013.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge