IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEBRASKA

| | |
|---|---|
| MARJORIE TRAMP, | Case Number: 8:11-cv-00371 |
| Plaintiff, | |
| | PLAINTIFF'S TRIAL BRIEF |
| v. | |
| ASSOCIATED UNDERWRITERS, INC., | |
| Defendant. | |

COMES NOW the Plaintiff, by and through counsel, and submits the following Trial Brief for the Court's consideration.

**BASIC FACTS**

In August 2007, Greg Gurbacki and Chris Hallgren purchased Associated Underwriters, Inc. Contemporaneous with the purchase of the business, Gurbacki and Hallgren's financing company and lender required 7 existing employees be discharged. At the time, Hallgren served as president and Gurbacki ran the office, in charge of the hiring and firing of employees. Gurbacki decided which 7 employees were discharged. Marjorie Tramp was hired by Associated Underwriters, Inc., in 2000 but was not one of the seven employees selected for discharge in 2007.

In 2008, Hallgren and Gurbacki believed a substantial savings in health insurance premiums would benefit Associated Underwriters' bottom line. They believed that older employees were contributing to increased health insurance premium costs for the company. Emails between Gurbacki and the insurance company during that time frame reveal conversations concerning rate discussions specifically as they related to the health and age of the employees at Associated Underwriters. For example, Gurbacki asked their provider to "relook" at their rates, specifically noting that two employees over the age of

50 had left the company.² Later, Gurbacki updated the demographic information by sending an email stating, "We have now lost Sue Witchell and Gayla [M]artin as well," at least one of whom was likewise an older employee. Finally, Gurbacki made it clear that Associated Underwriters was seeking other bids for insurance and reiterated "[w]e have lost several of the older, sicker employees and should have some consideration on this."

Hallgren met with Marjorie Tramp and Barb Treadway (at the time, 70 and 71 years of age respectively) in July 2008 and suggested that they utilize Medicare instead of the company's health care plan. Hallgren claims that in this meeting he offered to cover 100% of a Medicare supplement, which Hallgren believed would provide better coverage for the employees, and simultaneously cut costs for the company. Tramp denies that Hallgren offered to provide such supplemental coverage. Tramp and Treadway declined Hallgren's offer and remained on Associated Underwriters' health care plan.

In July 2008, Associated Underwriters, Inc. hired Dan Grasso and in October 2008, Gurbacki directed Grasso to issue a written reprimand to Tramp. The reprimand was presented on October 9, 2008 and accused Tramp of poor performance and set forth three examples as documentation: (1) Tramp mistakenly added the same vehicle on two policies; (2) Tramp cancelled insurance coverage for a house located in a hurricane zone resulting in a higher premium and deductible when the customer tried to reinstate coverage; and (3) Tramp failed to cancel policies in addition to causing renewals to be sent out when the policies had already been stopped. Along with receipt of the reprimand, Associated Underwriters placed Tramp on a 90-day probationary period. Tramp was not provided with any work improvement plan or given any suggestions on how to improve

her performance. During the probationary period, no additional performance issues were noted.

After 90 days, Tramp requested Grasso release her from probationary status. Tramp was released on January 29, 2009. Tramp's employment was terminated 5 days later on February 3, 2009. Three other employees were terminated at the same time: Treadway, 72 years old; Stacy Bell, 38 years old; and Andrea Altrock, 39 years old. All three worked in a different area than Tramp. Gurbacki asserted that he did not base his decision to terminate Tramp on her age, nor because Tramp refused the suggestion for alternative health care coverage. Instead, Gurbacki stated that he chose to include Tramp in the 2009 RIF because of her historically poor job performance. No written performance evaluations were conducted of any Associated Underwriters, Inc., employee during the period of Tramp's employment. No other employees were formally reprimanded during the period of Tramp's employment. Associated Underwriters did not replace Tramp following her termination. Tramp's job duties were assigned to four remaining employees all younger than Tramp, including two who were significantly less experienced/qualified.

After Tramp's discharge, Gurbacki and Hallgren again began searching for reduced health insurance premium costs. Similar to those emails sent by Gurbacki in 2008, in July of 2009 Gurbacki wrote:

> I just received the renewal rates for Associated Underwriters. I[f] I am reading this correct your proposal shows that we are getting almost a 25% increase. This will not be acceptable. Last year I know we spent a whole lot of time working and had no plans on remarketing, but if this is your best pricing we will have to go to market again.

> Since last year we have lost our oldest and sickest employees, Jim & Shari Devine are no longer here, Barb Treadway and Marjorie [Tramp] are no longer here. Please let me know if this is the best we can do, what choices we have with you as I know that Chris and Jeff Mann would like to stay with you but we were expecting a rate decrease from the group becoming younger and healthier not an increase.

On April 20, 2009, Tramp filed with the EEOC a charge of age discrimination against Associated Underwriters, Inc. On July 28, 2011, the EEOC issued a right to sue letter to Tramp who timely filed suit on October 27, 2011. The Complaint alleges two claims arising from the protection of the Age Discrimination in Employment Act: 1) age discrimination, and 2) retaliation. Tramp was targeted by the Defendant specifically because of her age to withdraw from the Defendant's health insurance plan and apply for Medicare benefits. The Defendant did not make similar requests of any younger employees. As a result of her refusal, the Defendant engaged in retaliatory conduct by first issuing a written reprimand and then terminating Tramp's employment. Plaintiff's age discrimination claim includes the Defendant's request and the retaliation claim arises from the Defendant's conduct.

## ARGUMENT

### I.   Evidentiary Concerns

*Plaintiff's Direct Evidence of Age Discrimination*
*Should be Admitted and Preclude Directed Verdict*

There is direct evidence of the Defendant's understanding as to the relationship between age and health care costs. From 2007-2009 the Defendant provided health insurance coverage for its employees through Coventry Health Care. The Plaintiff will present a series of email messages between Chris Hallgren or Greg Gurbacki and agents

of Coventry Health Care. These exhibits have not been objected to by the Defendant. The exhibits explain the Defendant's expectation to receive decreased health insurance premium costs as older employees were terminated and taken off the Defendant's coverage plan.

The first series of emails (2008) specifically stated that some consideration for reduced premium costs should be given because the company had lost some of its oldest and sickest employees. These messages were exchanged immediately before Hallgren met with Tramp and Treadway to request they decline continued participation in the company health insurance coverage and apply for Medicare coverage. The next series of emails (2009) occur after Tramp's termination, however, almost identical language is used requesting reconsideration for reduced health insurance premiums because Tramp and Treadway (the company's oldest employees and specifically identified) were no longer employed by the company.

In addition to the documentary evidence, Greg Gurbacki previously testified in his deposition that it was his understanding that if Tramp and Treadway were covered by the company health insurance the premium costs would be higher and, correspondingly, it would cost the company less if they were not covered. Hallgren similarly testified that it was his understanding that older employees increased the costs of health insurance premiums.

*Admission of Defendant's Financial Documents*

The Defendant has no objection to the majority of the Plaintiff's exhibits. In the Final Pre-Trial Conference Order, the Defendant has reserved relevance objections to various financial documents produced by the Defendant pursuant to discovery requests.

The Defendant has pled in its Answer, and is supported by the deposition testimony of several of Defendant's agents, that the Plaintiff's employment was terminated due to poor financial conditions, the need to reduce costs through a reduction-in-force, and that the Plaintiff had poor work performance. The financial documents that the Defendant has objected to are very relevant to establish that the Defendant's defense of the company losing money prior to the Plaintiff's termination is a pretext.

The Defendant has objected to receiving the Defendant's corporate tax returns, General Ledgers, Trial Balance Sheets, and Income and Expense Statements. All of these documents are relevant to show the Defendant's financial condition from 2007-2010. When taken together and compared to each other, the information contained in the documents will be used to question the credibility of Defendant's agents. This financial information will, without question, assist the trier of fact in determining whether Defendant's claims are mere pretext.

*Defendant's Post-Termination Shifting of Costs*
*Of Health Insurance to Employees*

Prior to the Plaintiff's termination, the law allowed employer's to shift all health insurance costs to employees. This was true as far back as 1997 when the United States General Accounting Office (GAO) prepared a report to the Senate Committee on Labor and Human Resources. In the report, the GAO identified the trend of employer's shifting the costs of health insurance benefits to employees.

> If at some point health insurance costs start rising again, employers and insurers will face heightened pressure to control costs. This may lead to increased cost shifting from employers to employees, reduced benefits in employer-based health plans, and faster declines in the number of employers offering health benefits.

The evidence will show that the year after the Plaintiff's termination the Defendant shifted a percentage of the health insurance premium costs to the employees and ultimately stopped providing health insurance coverage altogether. The Plaintiff intends to show the jury that she would have continued working for the Defendant until 2014, the year she retired. Evidence as to what benefits would have been offered or available to the Plaintiff if she had not been terminated is necessary for the trier of fact to correctly calculate the Plaintiff's damages and loss of benefits during that time period.

Such evidence is also relevant to show that the Defendant had options to termination that would have cost the Defendant nothing and that the Defendant refused to consider such options prior to requesting the Plaintiff apply for Medicare coverage. This evidence supports the position that the Defendant solely believed that keeping the Plaintiff on the company's health insurance coverage would cause increased premium costs to the company.

## II.  JURY INSTRUCTIONS

The Plaintiff has prepared proposed Jury Instructions including instructions related to claims of retaliation. These should be adopted by the Court and submitted to the Jury. The Age Discrimination in Employment Act, 29 U.S.C. § 623(d) (ADEA), expressly prohibits retaliation against employees who engage in "protected activity." In this case, the protected activity is Marjorie Tramp's legal right to participate in the Defendant's health insurance plan like each and every other employee.

Marjorie Tramp reasonably believed the Defendant was engaging in age discrimination when *asking* Marjorie to withdraw from the Defendant's health insurance plan and apply for Medicare benefits. Medicare benefits are distinctly age-related and,

furthermore, no other younger employees were asked to apply for Medicaid benefits for themselves or for minor children of an employee's family, shift coverage to a spouse's plan, etc. In fact, no other employees, other than the Defendant's two oldest employees, were contacted about changing their health insurance coverage. Marjorie Tramp had a reasonable, good faith belief that the Defendant had engaged in an unlawful employment practice and an absolute right to refuse the Defendant's request. *Stuart v. General Motors Corp.*, 217 F.3d 621, 634 (8th Cir. 2000); *Buettner v. Eastern Arch Coal Sales Co.*, 216 F.3d 707, 714 (8th Cir. 2000); *Wentz v. Maryland Cas. Co.*, 869 F.2d 1153, 1155 (8th Cir. 1989).

*Asking* Marjorie Tramp to apply for Medicare benefits because of her age gives rise to her age discrimination claim; *firing* Marjorie Tramp after she refuses to do so gives rise to her retaliation claim. It is without question that Marjorie Tramp suffered a "materially adverse" action when the Defendant issued a written reprimand and then terminated her employment. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68, 126 S. Ct. 2405, 2414-15 (2006).

In paragraph 15 of the Complaint, the Plaintiff generally alleged to have been harassed, retaliated against, and her employment terminated on the basis of her age. The Defendant generally denied the allegations contained in the Complaint and asserted affirmative defenses but otherwise did not challenge the sufficiency of the pleadings. The Plaintiff has two claims arising from the protection of the ADEA and the jury should be presented with instructions to decide each claim.

Respectfully submitted,

        MARJORIE TRAMP, Plaintiff.

By: _/s/ John P. Weis_____
John P. Weis, #19618
Wolfe, Snowden, Hurd,
Luers & Ahl, LLP
Wells Fargo Center
1248 "O" Street, Suite 800
Lincoln, NE 68508
(402) 474-1507
jweis@wolfesnowden.com

ATTORNEYS FOR THE PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    Ms. Kathryn J. Derr
    1301 South 75th Street, Suite 100
    Omaha, Nebraska 68124
    kderr@berkshire-law.com

And I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

    None.

                                                               /s/John P. Weis_____