# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARJORIE TRAMP,<br><br>              Plaintiff,<br><br>    vs.<br><br>ASSOCIATED UNDERWRITERS, INC.,<br><br>              Defendant. | 8:11CV371<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion for Attorney Fees and costs in Aid of Execution on the Judgment, ECF No. 183, filed by Plaintiff Marjorie Tramp,[1] and the Motion for Rule 11 Sanctions, ECF No. 187, filed by Defendant Associated Underwriters, Inc. Tramp's Motion will be granted in part, and the Motion for Sanctions will be denied.

## BACKGROUND

Plaintiff brought this action seeking damages for harassment, retaliation, and termination based on age, race, disability, and sex, in violation of Title VII of the Civil Rights Act (42 U.S.C. § 2000e-5), the Americans with Disabilities Act, 42 U.S.C. §§ 12102. (ADA), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 626, *et seq.*). After motion practice and an appeal, Tramp proceeded to trial on her ADEA claim under theories of discrimination and retaliation. On June 19, 2015, the jury returned a verdict in favor of Associated Underwriters on Tramp's ADEA discrimination claim, but in Tramp's favor on her ADEA retaliation claim in the amount of

---

[1] At some point during the litigation of this case, Plaintiff changed her last name to Moss. For clarity in the record, the Court will refer to Plaintiff by the last name "Tramp" because it was her name when this case was originally filed.

$128,680.78. ECF No. 130. The jury also determined that Associated Underwriters' conduct was willful. *Id.* The Court entered Judgment, ECF No. 135, in Tramp's favor in the amount of $257,361.56, plus post-judgment interest at the rate of .27 percent per annum. ECF No. 135. On October 16, 2015, the Court awarded attorney's fees in the amount of $132,198.80 and costs in the amount of $6,522.12. Thus, the total award to Tramp was $396,082.48, plus post-judgment interest.

In December of 2015, Associated Underwriters sold the entirety of its assets to Farmers National Co., and Tramp was unable to collect her Judgment from Associated Underwriters. After unsuccessful execution, Tramp requested leave to perform some post-judgment discovery with respect to the formation of a nonparty, Relinco, Inc. Tramp alleged that Associated Underwriter's sole shareholder, Greg Gurbacki, may have transferred some or all Associated Underwriter's assets to Relinco with intent to hinder, delay, or defraud Associated Underwriter's creditors. While the Court permitted Tramp to conduct limited post-judgment discovery relevant to Tramp's allegations, the Court did not conclude that Tramp was able to execute judgment against any nonparties.

On October 27, 2016, Tramp filed a complaint in the District Court of Sarpy County, Nebraska, against Associated Underwriters; Relinco, Inc.; C-Tek Insurance Agency, LLC; Roll the Bones, LLC; C-Notes, LLC; and Gurbacki (the "State Court Litigation").[2] In the State Court Litigation, Tramp sought to set aside several transfers under the Nebraska Fraudulent Transfer Act, Neb. Rev. Stat. §§ 36-701 to 36-712, and to pierce the corporate veils of the corporate defendants. After trial, the District Court of Sarpy County entered

---

[2] The State Court Litigation is captioned *Moss* v. *Associated Underwriters, Inc., et. al.* Case No. CI 16-1744.

judgment against Associated Underwriters; Relinco, Inc.; C-Tek Insurance Agency, LLC; Roll the Bones, LLC; and Gurbacki[3] on Tramp's claims to pierce the corporate veil, but not on Tramp's fraudulent transfer claims. *See* State Court Order at 7, ECF No. 185-2, PageID.2149. The state court entered judgment against each defendant, jointly and severally, in the amount of $396,082.48, the amount of the Judgment in this case.

In her pending Motion, Tramp seeks attorney's fees and costs incurred in the State Court Litigation because she had to bring the State Court Litigation to collect on the Judgment in this case. Associated Underwriters argues that Tramp's Motion is frivolous and merits sanctions under Rule 11 of the Federal Rules of Civil Procedure.

## DISCUSSION

**I. Tramp's Right to Recover Additional Fees and Costs**

The Court must determine whether Tramp may seek additional attorney's fees and costs incurred in bringing the State Court Litigation to collect her ADEA Judgment. There is no dispute that an award of attorney's fees and costs are mandatory under the ADEA. *See* 29 U.S.C. § 626(b), incorporating 29 U.S.C. § 216(b). The statute states that "in addition to any judgment awarded to the plaintiff or plaintiffs, [the court shall] allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Court awarded Tramp fees and costs because she prevailed in the underlying litigation. Tramp seeks an additional fee award for expenses incurred to collect on the original judgment, including expenses for the State Court Litigation.

---

[3] Defendant C-Notes, LLC, was dismissed before trial.

Neither this Court nor the parties have identified any Eighth Circuit precedent or any decision of another court addressing this precise issue. However, several courts have indicated that fees incurred in post-judgment collection efforts are recoverable under a variety of statutes. *See, e.g., Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 716 (8th Cir. 1997) ("Reimbursement for post-judgment litigation fees can be as important as reimbursement for pre-judgment fees in accomplishing the purpose of section 1988.").[4] The Seventh Circuit reasoned that "the entry of judgment is not the end of the litigation; in this case, it may not even be the beginning of the end." *Free v. Briody*, 793 F.2d 807, 809 (7th Cir. 1986) (ERISA case).

The Eighth Circuit has provided some guidance as to when a post-judgment fee award is appropriate. In *Jenkins*, the court explained that "[s]ome types of post-judgment activities are readily seen to be necessary adjuncts to the initial litigation, whereas other types of activities are more like a new, separate lawsuit and require a fee determination independent of the underlying case." 127 F.3d at 716-17. "Thus, monitoring the defendant's compliance with court orders and enforcing the remedy are generally compensable as part of the underlying case." *Id.* at 717. If "the plaintiff's claim in the post-judgment litigation is inextricably intertwined with the underlying claims," then a fee award is appropriate. *Id.* at 718.

---

[4] *See also Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 544-45 (10th Cir. 2000) (False Claims Act); *Free v. Briody,* 793 F.2d 807, 808-809 (7th Cir. 1986) (Employment Retirement Income Security Act); *Balark v. Curtin*, 655 F.2d 798, 802-03 (7th Cir. 1981) (civil rights laws); *Van Dyke v. BTS Container Serv., Inc.*, No. CIV. 08-561-KI, 2010 WL 56109, at *1 (D. Or. Jan. 4, 2010) (Fair Labor Standards Act and state wage law); *DiFrancesco v. Home Furniture Liquidators, Inc.*, No. 06-21709-CIV, 2009 WL 36550, at *5 (S.D. Fla. Jan. 6, 2009) (Fair Labor Standards Act); *Diaz v. Paragon Motors of Woodside, Inc.*, 2008 U.S. Dist. Lexis at *25 (E.D.N.Y. May 7, 2008) (Truth in Lending case).

While there is no bright line rule for determining whether post-judgment litigation is "inextricably intertwined" with the underlying case, the Eighth Circuit has recognized some instances where a fee award for post-judgment litigation is appropriate. In *Gilbert v. Monsanto Co.*, 216 F.3d 695, 702 (8th Cir. 2000), a plaintiff settled his ADEA claims with his employer but brought an ancillary action to enforce the settlement agreement. *Id*. The district court found that the employer breached the settlement agreement but denied the plaintiff's request for attorney's fees incurred to bring the ancillary enforcement action because attorney's fees were not permitted for a successful breach of contract claim. *Id*. at 702. The Eighth Circuit agreed that the employer breached the settlement agreement but concluded that the plaintiff was entitled to fees under the ADEA for the enforcement action. *Id*. The court reasoned that the plaintiff had to litigate the enforcement action to a successful conclusion to receive the benefit of the ADEA settlement. *Id*. The plaintiff did not merely prevail on a separate breach of contract claim. *Id*. Rather, the plaintiff succeeded in enforcing his ADEA judgment. *Id*. at 703 (reasoning that "monitoring the defendant's compliance with court orders and enforcing the remedy are generally compensable as part of the underlying case.") (quoting *Jenkins*, 127 F.3d at 717).

Similarly, Associated Underwriter's actions forced Tramp to bring the State Court Litigation to receive the benefit of Tramp's successful ADEA claim. Although the State Court Litigation involved additional parties and was a separate lawsuit, it was intertwined with Tramp's lawsuit in this Court. The state court expressly recognized that the State Court Litigation arose out of Tramp's lawsuit in this case. State Court Order at 1, ECF No. 185-2, PageID.2143. The State Court concluded that the corporate veil must be pierced to "avoid injustice" and entered judgment in Tramp's favor in the exact amount of

5

the judgment in this case. *Id.* at 6, PageID.2148. Further, at least some of the evidence supporting the State Court Litigation came to light when this Court permitted Tramp to conduct additional discovery to determine whether Associated Underwriters acted with the intent to hinder or delay creditors. *See* Mem. and Order at 5, ECF No. 173, PageID.1717. Tramp reasonably brought the State Court Litigation to enforce her ADEA Judgment. Accordingly, the State Court Litigation is intertwined with this case and Tramp is entitled to an additional fee award for her post-judgment collection efforts.

Associated Underwriters argues that no federal rule or statute permits Tramp to seek an additional award in this Court for attorney's fees and costs incurred pursuing parties other than Associated Underwriters in the separate State Court Litigation. Associated Underwriters first argues that Tramp's request fails because it was not made within 14 days of the Judgment, as required by Fed. R. Civ. P. 54(d)(2). This argument ignores that the 14-day deadline can be waived by court order and courts have granted attorney's fee requests well after the deadline where a plaintiff incurred expenses while "enforcing the remedy." *See Jenkins*, 127 F.3d at 717. Further, the state court expressly recognized that several of the allegedly fraudulent transfers "could not have reasonably been discovered by [Tramp] prior to completion of the federal case." State Court Order at 6, ECF No. 185-2, PageID.2148. Accordingly, Tramp's request is not barred by Fed. R. Civ. P. 54(d)(2).

Second, Associated Underwriters argues that Fed. R. Civ. P. 69 required Tramp to bring her fraudulent transfer and alter ego claims in the federal district court as ancillary or supplemental to the Judgment. However, this Court may not have had jurisdiction over the claims and defendants in the State Court Litigation. *See Peacock v. Thomas*, 516

U.S. 349, 357-58 (1996) (ancillary jurisdiction does not extend to a new action against third parties not subject to the original judgment). Perhaps recognizing this potential jurisdictional issue, Tramp reasonably asserted her claims in state court. Associated Underwriters identifies no federal rule that precludes Tramp's request because she brought the action in state court rather than as an ancillary action in this Court. The only requirements articulated in the Eighth Circuit are that post-judgment collection efforts be "inextricably intertwined" with the underlying action. For the reasons stated, the Court concludes that the State Court Litigation was a reasonable collection activity related to Tramp's ADEA claim.

Associated Underwriters also argues that Tramp's request must be denied because Nebraska law does not permit a fee award for fraudulent transfer and corporate veil-piercing claims. In support, Associated Underwriters cites *Thomas v. Khrawesh*, No. 2:17-CV-10026, 2017 WL 5494234 (E.D. Mich. Nov. 16, 2017), *aff'd*, 738 F. App'x 870 (6th Cir. 2018). In *Thomas*, the plaintiff obtained a default judgment in her Title VII action and filed a separate action to pierce the corporate veil of her former employer. *Id.* at *1. The court denied the plaintiff's requests, concluding that she could not collect fees for post-judgment collection efforts. *Id.* at *2. The plaintiff's request was denied because the plaintiff relied on cases from outside the Sixth Circuit and brought a separate cause of action for piercing the corporate veil that did not authorize fees. *Id.*

Associated Underwriters argues that, like the plaintiff in *Thomas*, Tramp's request fails because the State Court Litigation relied exclusively on state law for recovery. However, just as the court in *Thomas* considered the lack of Sixth Circuit precedent, this Court must consider the guidance of Eighth Circuit precedent. As noted above, the Eighth

7

Circuit permitted a fee award for a post-judgment breach of contract action brought to enforce a judgment in an ADEA case. *Gilbert*, 216 F.3d at 702. The court in *Gilbert* reasoned that the purpose of the breach of contract action was to monitor compliance and enforce the plaintiff's ADEA remedy. *Id.* at 702-03. Similarly, the purpose of the State Court Litigation was to enforce the Judgment in this case and ensure Associated Underwriters' compliance.

Finally, Associated Underwriters argues that no law permits a fee award to a prevailing party for a separate State Court Litigation filed to impose liability against parties who were not, and could not have been, parties in Tramp's ADEA case. To be clear, the Court cannot impose a fee award on any party other than Associated Underwriters. Post-judgment discovery and the State Court Litigation revealed why Associated Underwriters was undercapitalized and unable to pay the Judgment in this case. The State Court Litigation allowed Tramp to overcome Associated Underwriters's deficiencies and potentially collect the Judgment. The State Court Litigation was a reasonable collection effort and, although the Court cannot impose fees against any non-party, an award against Associated Underwriters is appropriate.[5]

## II. Amount of Fee Award

Having determined that Tramp is entitled to a fee award for her post-judgment collection efforts, the Court must determine the reasonableness of her requested award. To calculate a reasonable attorney's fee, "courts typically begin by using the lodestar method[,]" which "multiplies the number of hours reasonably expended by the reasonable

---

[5] For the reasons stated, a fee award is appropriate in this matter. Accordingly, Associated Underwriters's Motion for Rule 11 sanctions is without merit and is denied.

hourly rates." *Brewington v. Keener*, 902 F.3d 796, 805 (8th Cir. 2018) (quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Id.* "There is no precise rule or formula for making these determinations." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)).

### A. Number of Hours

In determining the lodestar, the Court should exclude hours that were not "reasonably expended." *Hensley*, 461 U.S. at 434. It is appropriate to reduce the lodestar to account for "excessive, redundant, or otherwise unnecessary work." *U & I Sanitation v. City of Columbus*, 112 F. Supp. 2d 902, 904 (D. Neb. 2000). "A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). The fee applicant bears the burden of establishing entitlement to an award and documenting the hourly rates and time spent. *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (quoting *Hensley*, 461 U.S. at 437).

"Inadequate documentation may warrant a reduced fee" because imprecise or incomplete billing records prevent any meaningful review of a fee application. *Id.* In *Flygt*, the Eighth Circuit affirmed the district court's reduction of the lodestar where the billing records included entries such as "legal research," "trial prep," or "met w/ client." *Id.* The Eighth Circuit noted that some entries were so vague that the district court could not determine whether they were related to the applicant's successful claims or whether they even pertained to the applicable litigation. *Id.* The Eighth Circuit suggested that, in the future, a district court may consider directing the fee applicant to submit additional records

9

before reducing the amount, but ultimately concluded that the district court's reduction of the fee was not an abuse of discretion. *Id.*

Tramp's attorneys and staff spent approximately 950 hours in post-judgment discovery in this case and in bringing the State Court Litigation to trial. Tramp's attorneys successfully obtained a judgment piercing the corporate veils and holding the defendants jointly and severally liable for an amount equal to the amount of the Judgment in this case. Tramp's success in the State Court Litigation gives her the opportunity to satisfy her underlying Judgment. Because the State Court Litigation involved alleged financial fraud and piercing of corporate veils pertaining to five corporate and one individual defendant, Tramp's attorneys had to review thousands of pages of financial information to prepare their case.

While the great majority of the entries in Tramp's billing summary appear reasonable, some appear duplicative or lack proper description. For example, some entries contain vague descriptions such as "Receipt and review e-mail re: status" and others describe conferences or correspondence without any indication of their relation to this case. To account for these entries, which are minimal, the Court will reduce the requested award by 10 percent.

### B. Reasonableness of Rates

The rates requested are reasonable for the Omaha market. A survey of recent cases in this district demonstrates that the rates requested by Tramp's attorneys are in line with the the prevailing rates in the Omaha community for attorneys with comparable experience. This Court has generally approved rates of between $225-$325/hour for partners with less than 25 years of experience and rates of $175-$200 for work done by

associates. For example, in *Vallejo v. Amgen, Inc.*, No. 8:14CV50, 2017 U.S. Dist. LEXIS 115749, at *25-26 & n.3 (D. Neb. May 30, 2017), Judge Zwart rejected a rate of $375.00/hour for an Omaha attorney and instead awarded a flat rate of $275.00 per hour "[b]ased upon the prevailing market rate and after reducing duplication." In *Powers v. Credit Mgmt. Servs.*, No. 8:11CV436, 2016 U.S. Dist. LEXIS 164362, at *10 (D. Neb. Nov. 29, 2016), Judge Rossiter awarded hourly rates of $375 for a Chicago attorney with 43 years of experience, $350/hour for an Omaha attorney with 25 years of experience, and $325/hour for an Omaha attorney with 23 years of experience, "in view of their skill and experience and in view of the complexity of class-action consumer litigation." *Id.* Similarly, Judge Strom refused to award $450/hour to a Chicago attorney with 41 years of experience, noting "an hourly rate of $450 is out of line with rates in this locality, although they may be appropriate in Chicago and similar cities," and instead reduced his rate to $325/hour. *Henggeler v. Brumbaugh & Quandahl, P.C.*, No. 8:11CV334, 2014 U.S. Dist. LEXIS 24405, at *13-14 (D. Neb. Feb. 26, 2014).[6]

---

[6] *See also, e.g.*, *Argenyi*, No. 8:09CV341, 2014 U.S. Dist. LEXIS 63726, at *7-8 (concluding that the requested hourly rate of one out-of-town attorney should be reduced from $300 to $250 based on the attorney's limited experience (7 years)); *Bowen v. Allied Prop. & Cas. Ins. Co.*, No. 4:11CV3163, 2013 U.S. Dist. LEXIS 33174, at *5 (D. Neb. Mar. 11, 2013) (concluding that amounts $275, $210, and $175 were found to be reasonable rates for attorneys of varying experience, with the associates receiving less); *Johnson v. United of Omaha Life Ins. Co.*, No. 8:11CV296, 2013 U.S. Dist. LEXIS 185375, (D. Neb. July 5, 2013) (holding that rates of $340 and $350 an hour were reasonable for attorneys with 30 years of experience or specialized expertise); *Doe v. Neb. State Patrol*, No. 8:09cv456, 2012 U.S. Dist. LEXIS 181029, at *22-24 (D. Neb. Dec. 21, 2012) (collecting cases to conclude that fees between $200 to $300 to be a reasonable market rate in Nebraska); *United States v. $104,160.00 in U.S. Currency*, No. 8:08CV463, 2009 U.S. Dist. LEXIS 106968, at *2 (D. Neb. Nov. 17, 2009) (holding that $200 hourly rate for experienced Omaha attorney representing claimant in civil forfeiture action was reasonable in this locality); *Sheriff v. Midwest Health Partners, P.C.*, No. 8:07CV475, 2009 U.S. Dist. LEXIS 91786, at 10 (D. Neb. Sep. 16, 2009) (concluding that in Title VII action, Omaha attorneys' hourly rates of between $200 and $300 appeared consistent with hourly rates in relevant market based on evidence in record).

Tramp requests fees for two attorneys: John P. Weis and Christopher W. Peterson. Weis has over 20 years of civil litigation experience. He has personally appeared before the Nebraska Supreme Court and Court of Appeals on numerous occasions. He appeared and argued before the U.S. Court of Appeals for the Eighth Circuit and conducted the successful trial in this case. After Judgment in this case, the Court awarded attorney fees for Weis's billable time at a rate of $300 per hour. Weiss again requests a fee award at his rate of $300 per hour. Peterson had six years of experience, mostly in corporate litigation. During his time with Weis's firm, he published two law review articles on piercing the corporate veil in Nebraska. His requested billable rate is $200 per hour. The Court concludes Weis and Peterson's hourly rates are reasonable.

### C. Costs

The ADEA permits an award of reasonable costs in addition to attorney's fees. 29 U.S.C. §§ 216(b), 626(b). Tramp seeks costs of $22,795.96, the majority of which were related to deposition costs and expert witness fees. While the majority of costs were reasonable, the use of Tramp's expert was limited at trial. Tramp employed Chris Best as an expert witness in specialized accounting and business transactional experience. The state court determined that Best was qualified to testify as to financial and accounting matters, but not on corporate legal matters. State Court Judgment at 2, ECF No. 185-2, PageID.2145. Because of the limitations on Best's testimony, the requests costs will be reduced by 25 percent.

### D. Summary of Fee Award

In accordance with the Court's reasoning above, the Court will adjust the lodestar and costs determination as follows:

| Name | Position | Hours | Rate | Fee |
|---|---|---:|---:|---:|
| John P. Weis | Attorney | 286.50 | $300 | $85,950.00 |
| Christopher A. Peterson | Attorney | 573.5 | $200 | $114,700.00 |
| Barbara D. Sorenson | Paralegal | 2.5 | $80 | $200.00 |
| Jeni D. Saner | Paralegal | 1 | $80 | $80.00 |
| Lyle E. Wheeler | Law Clerk | 26.7 | $60 | $1,602.00 |
| Kathryn J. Van Balen | Law Clerk | 1.1 | $60 | $66.00 |
| Andrew D. Wurderman | Law Clerk | 37.6 | $60 | $2,256.00 |
| **Total Lodestar** | | **928.90** | | **$204,854.00** |
| *10% Reduction for Vague, Excessive, or Unnecessary Work* | | | | $184,368.60 |
| *Approved litigation expenses (costs)* | | | | $17,096.97 |
| **Total Fee Award** | | | | **$201,465.57** |

Accordingly,

IT IS ORDERED:

1. The Motion for Attorney Fees and Costs in Aid of Execution on the Judgment, ECF No. 183, filed by Plaintiff Marjorie Tramp, is granted as follows:

   Plaintiff Marjorie Tramp is awarded an attorney's fee in the amount of $184,368.60 and costs in the amount of $17,096.97; and

2. The Motion for Rule 11 Sanctions, ECF No. 187, filed by Defendant Associated Underwriters is denied.

Dated this 12th day of July 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge